own internal policies and procedures. Agent shall indemnify and hold harmless Company from and against any and all claims by any Agent's employees, contractors, and representatives for payment of commissions. Company shall have no responsibility for the payment or withholding of taxes in connection with any commissions due hereunder.

## XIII.  BINDING ARBITRATION:

A.    The parties will attempt in good faith to resolve any controversy or claim arising out of or relating to this Agreement promptly through discussions between themselves at the operational level. In the event a resolution cannot be reached, such controversy or claim shall be negotiated between appointed counsel or senior executives of the parties who have authority to settle the controversy.

B.    The disputing party shall give the other party written notice of the dispute. If the parties fail to resolve such controversy or claim within thirty (30) days of the disputing party's notice, either party may seek arbitration as set forth below.

C.    Any controversy or claim arising out of or relating to this Agreement, or a breach of this Agreement, shall be finally settled by binding arbitration in Austin, Texas and shall be resolved under the laws of the State of Texas, without regard to its choice of law principles. The arbitration shall be conducted before a single arbitrator in accordance with the commercial rules and practices of the American Arbitration Association then in effect.

D.    Any award, order, or judgment pursuant to such arbitration shall be deemed final and binding and may be enforced in any court of competent jurisdiction. The parties agree the arbitrator shall have no power or authority to make awards or issue orders of any kind except as expressly permitted by this Agreement, and in no event shall the arbitrator have the authority to make any award that provides for punitive or exemplary damages. All arbitration proceedings shall be conducted on a confidential basis. The arbitrator may, as part of the arbitration award, permit the substantially prevailing party to recover all or part of its attorney's fees and other out-of-pocket costs incurred in connection with such arbitration.

## XIV.  FORCE MAJEURE:

Neither party shall be liable for delays in performing, or failure to perform, this Agreement or any obligations hereunder, which are directly attributable to causes beyond the reasonable control of the party so delayed or failing to perform, including but not limited to, acts of God, fires, floods, strikes, war, failure of a common carrier or equipment or suppliers, cable cuts, or acts of intervention by any third party or governmental authority. However, the party whose performance is delayed shall use good faith efforts to minimize the effects of such delay.

## XV.  NOTICES:

A.    Every notice, demand, consent, approval or other communication which either party is required or desires to give to the other party shall be in writing and shall be sent via U.S. Registered Mail, Return Receipt Requested or overnight courier with tracking capabilities as follows:

If to Company:        Broadwing Telecommunications Inc.
                      Two Riverway, Suite 800
                      Houston Texas 77056
                      Attention: Vice President, Alternate Channel Sales

With a copy to:       Broadwing Telecommunications Inc.
                      1122 Capital of Texas Highway South

07/20/2001  15:44   2127798687              OFFICE DEPOT 505                    PAGE  09

07/11/2001  09:43   18007969775                    BENGELAUB                      PAGE  09

Austin, Texas 78746-6426
Attention: Legal

If to Agent:    _Bennett Goldberg_

_300 East 34th St #336_

_NYC NY 10016_

Attn:    _Bennett Goldberg_

Said  notices may be sent to such other address or addresses as the parties may from time to time designate by written notice hereunder.

B.      Every notice, demand, request or other communication sent in the manner aforesaid shall be deemed to have been given and shall be effective on the third business day after the same has been properly addressed and deposited as aforesaid.

## XVI.  GENERAL:

A.      Company may execute similar Agreements with other Agents.

B.      All Preferred Interexchange Carrier charges for customers sold by Agent will be paid by customer.

C.      Company shall in no way be considered or represented as an official endorser of any party or customer represented by Agent.

D.      Company may offset any amounts owed to Company by Agent against any commissions Company may owe to Agent under this Agreement or any other agreement.

**IN WITNESS WHEREOF**, the parties hereto have caused these presents to be executed, acknowledged and delivered in a form and manner proper and sufficient at law, all as of the date and the year first above written.

COMPANY:
Broadwing Telecommunications Inc.

By: _____

Title: _Director Alt. Channels_

AGENT:
Name:   _Bennett Goldberg_

By:   _Bennett Goldberg_   7/23/01

Title:   - _sole proprietor_

Phone Number: _212-447-9733_

Fax Number:   _N/A_

E-Mail Address: _silvergold1836@aol.com_

Social Security No: _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_

Tax Id No.: _____

Broadwing Telecommunications Inc. – Confidential          0900V.02                    Page 7

07/20/2001  15:44    2127798687           OFFICE DEPOT 585              PAGE  10
   07/16/2001  12:46   18087969775        SENSELAUS                    PAGE  82

# ATTACHMENT A

## VOLUME TIERS/COMMISSION SCHEDULE

| | |
|---|---|
| $0-50,000 | 11% |
| $50,001-200,000 | 13% |
| $200,001-500,000 | 16% |
| $500,001+ | 19% |

Broadwing Telecommunications Inc. – Confidential          0900V.02          Page 8

07/20/2001  15:44   2127798687          OFFICE DEPOT 505          PAGE  02
  07/11/2001  09:43   18007969775          SENGELAUB                 PAGE  02



## IMPORTANT !!

AGENT SERVICES AGREEMENT BETWEEN

BROADWING TELECOMMUNICATIONS, INC.

AND

_Bennett Goldberg_

1. For accounting and commission purposes, the information that is provided on this contract must reflect the correct (Business) Name, (business) type and corresponding ID.

2. The 'AND' name provided should be the payable name for commission purposes.

3. The ID - whether, Fed ID, Social Security Number or EIN must match the 'AND' name as it is registered with the Internal Revenue Service.

Zoom In   Zoom Out   Reset Size   Printable (Use back button to return)
Statistics
Goto Page(s): 1-5 6-10 11-12

07/20/2001  15:44   2127798687           OFFICE DEPOT 505              PAGE  11

ADDENDUM/AMENDMENT
TO
SALES AGENT AGREEMENT

THIS ADDENDUM/AMENDMENT (the "Amendment") is made and entered into as of this 23ʳᵈ day of _July_____, 200 1 , by and between Broadwing Telecommunications Inc. (hereinafter referred to as "Company"), and _Bennett Goldberg___ (hereinafter referred to as "Agent").

WITNESSETH

WHEREAS, Company and Agent have previously entered into a Sales Agent Agreement dated the 23ʳᵈ day of _July_____, 200 1 (the "Agreement"); and

WHEREAS, Company and Agent now mutually desire to amend the Agreement in certain respects and attach this Amendment as an Addendum to the Agreement.

NOW THEREFORE, Company and Agent, for the mutual benefits and under the conditions described below, do hereby amend the Agreement in the following particulars:

**IV. COMPENSATION**

I.    **Add the following paragraph in its entirety:**

"I. Agent agrees to commit to a minimum of fifty thousand dollars ($50,000) in monthly billings beginning in October 2001, one hundred thousand dollars ($100,000) in monthly billings beginning in January 2002, one hundred and seventy-five thousand dollars ($175,000) in monthly billings beginning in April 2002 and two hundred thousand dollars ($200,000) in monthly billings beginning in July 2002. In consideration of said commitments, Agent will be immediately eligible for the $200,001-$500,000 volume tier and associated commission percentages in Attachment A. Should Agent not reach each of the above commitments, Agent's volume tier and associated commission percentages in Attachment A will be adjusted to reflect Agent's actual billing volume. Agent must maintain the above billing thresholds to be eligible for the associated volume tier and commission percentages or Agent's volume tier and associated commission percentages will be reduced to reflect Agent's actual billing volume."

**X. CONFIDENTIAL TREATMENT**

A.    **Replace this paragraph in its entirety with the following:**

"A. The terms and conditions of this Agreement and materials provided by Company including, but not limited to, customer lists, price sheets, price quotes, information regarding Company's facilities, information relating to customers or prospective customers of Agent and/or Company, marketing and business plans and projections, are disclosed in confidence and are intended to be used solely to carry out the terms and conditions of this Agreement. Agent shall keep all such information confidential and shall not release or disclose it to any other party during the term of this Agreement and for a period of two (2) years after termination of this Agreement. Agent shall take appropriate precautions to prevent the unauthorized disclosure or misuse of all confidential information by any of its employees or representatives, or by any other authorized person having access to such information. Except as specifically

07/20/2001  15:44    2127798687              OFFICE DEPOT 585              PAGE  12

authorized by the parties in advance and in writing, neither party will publish, communicate, or otherwise disclose to any third party any such confidential information.  At the expiration or termination of this Agreement, Agent shall return to Company all written and tangible materials provided to or produced by Agent  to Company."

     **IN WITNESS WHEREOF**, the parties hereto have caused these presents to be executed, acknowledged and delivered in a form and manner proper and sufficient at law, all as of the date and the year first above written.

**COMPANY:**                                   **AGENT:**
BroadWing Telecommunications, Inc.

By:_____           By:_____ 7/23/01
Name: Dennis Harrell                        Name: Bennett Goldberg
Title: Director, Alternate Channel Sales        Title:_____

# EXHIBIT B

# *Broadwing*

### NON-EXCLUSIVE HIGH VOLUME INDEPENDENT
### BUSINESS PARTNER MARKETING AGREEMENT

THIS AGREEMENT (the "Agreement") is made and entered into as of this 1st day of April 2005 (the "Effective Date") by and between Broadwing Communications, LLC, a Delaware limited liability company with its principal place of business at 1122 Capital of Texas Highway South, Austin, Texas 78746-6426, hereinafter referred to as ("Broadwing"), and, Ben Goldberg a sole proprietorship with its principal place of business at 300 East 34th Street, #33G, New York, New York 10016 (hereinafter referred to as "Business Partner").

### WITNESSETH

WHEREAS, Broadwing is engaged primarily in providing communications services; and

WHEREAS, Broadwing desires to expand its customer base to include a greater number of active business customers through a Business Partner Marketing Program; and

WHEREAS, Broadwing has agreed to permit Business Partner to sell and market Broadwing's communications services to business customers under the terms and conditions hereinafter set forth.

NOW THEREFORE, Broadwing and Business Partner, for the mutual benefits and under the conditions described below, do agree as follows:

### I.  BUSINESS PARTNER RESPONSIBILITIES.

A.    In performing under this Agreement, Business Partner represents, warrants, and covenants that it shall:

1.   comply with the Terms and Conditions of this Agreement;

2.   conduct itself in an honest, professional, and ethical manner and do nothing to discredit, dishonor, reflect adversely upon, or in any way injure the reputation or business of Broadwing;

3.   comply with all applicable federal, state and local laws, rules, regulations, and ordinances;

4.   only employ personnel who are fully qualified to perform Business Partner's duties hereunder;

5.   deal directly with, and only with, designated Broadwing personnel with regard to all matters arising hereunder;

6.   provide current customer information requested by Broadwing as reasonably required for customer site surveys;

7.  maintain documents and records as required in the normal course of business, supporting its promotion and marketing of Broadwing services to customers, in a commercially reasonable manner and in compliance with all applicable laws;

8.  make only representations concerning Broadwing and the services that have been expressly approved in advance by authorized Broadwing personnel and refrain from doing anything which might discredit, reflect adversely upon or in any way injure the name or reputation of Broadwing;

9.  use commercially reasonable efforts to give prompt, courteous, and efficient service to customers and to act in accordance with the highest standards of honesty and integrity in all customer dealings; and

10. immediately notify Broadwing of: (a) any customer or prospective customer complaints relating to Broadwing or the services about which the Business Partner has knowledge; (b) any Business Partner actions, customer actions, or prospective customer actions about which the Business Partner has knowledge, relating to this Agreement or otherwise relating to Broadwing's provision of services, that are or may be in violation of any laws or otherwise give rise to liability of Broadwing.

11. not engage in any pyramid scheme or multilevel marketing plan which violates any state or federal laws in connection with this Agreement or the services to be rendered pursuant to this Agreement.

B.    Business Partner shall obtain the proper signature or authorization of the customer on Broadwing's then-current standard service agreement, service order form, and/or other documents provided or approved by Broadwing. All service agreements and service order forms are subject to prior credit approval and acceptance by Broadwing. Broadwing reserves the right to cancel or reject any request for services and any service agreement or service order form for any reason without liability and without any further commissions due to Business Partner.

C.    Business Partner shall only sell Broadwing products and services at Broadwing's then-current Business Partner rates. Business Partner understands and agrees that Broadwing reserves the right to establish, revise, or change the prices and/or terms of its customer's rates at any time regardless of how it affects Business Partner's commissions. When such changes are provided in writing to Business Partner or posted on Broadwing's Business Partner Channel extranet site, such changes are automatically and immediately effective and shall become part of this Agreement without further action.

## II.  BROADWING RESPONSIBILITIES.

A.    Broadwing will provide communications services to those customers offered by Business Partner and accepted by Broadwing, subject to the exclusions set forth in Section V below.

B.    Broadwing will maintain records indicating the accounts provided to Broadwing by Business Partner and the services and products (including the rates and charges) purchased by said customers.

C.    Broadwing will provide customer service, billing, postage, and collection services in accordance with Broadwing's customary business practices.

D.    Broadwing will compensate Business Partner according to Section IV below.

E.    Broadwing will allow Business Partner to use Broadwing's name and logo on sales brochures and other advertising material provided Business Partner obtains prior written approval from Broadwing's Marketing Department of the form and content of all printed material before using or circulating any such material. Broadwing may provide advertising and other sales collateral material to Business Partner from time to time.

## III.  BUSINESS PARTNER IS AN INDEPENDENT CONTRACTOR.

A.    Although the term "Partner" is used to describe the relationship between the parties, Business Partner is nevertheless an Independent Contractor, and the relationship that exists between Business Partner and Broadwing is not a legal partnership in any way.

B.    This Agreement does not contemplate, create, or constitute a joint venture, partnership, or similar relationship between Business Partner and Broadwing. Business Partner is, and shall act, operate, and hold itself out only as, an Independent Contractor and as such shall be solely responsible for all costs associated with operating its business and incurred by Business Partner in procuring, promoting, marketing, and/or soliciting orders from customers or prospective customers. Business Partner shall have no right, authority, or power to represent or act on behalf of Broadwing unless expressly authorized to do so in this Agreement. Business Partner shall have no right or authority, nor shall Business Partner hold itself out as having any right or authority, to create any contract or obligation, express or implied, binding upon Broadwing, including accepting orders for services or agreeing to or offering prices, or terms and conditions of sale that in any way differ from the current standard prices, terms and conditions provided by Broadwing to Business Partner. Nothing in this Agreement shall restrict Broadwing, its affiliates or its representatives from independently procuring, promoting, marketing and/or soliciting services to any third party nor shall Business Partner be restricted from marketing competing products and services to prospective customers.

C.    Neither Business Partner nor its employees and/or its representative shall be deemed to be Broadwing's employees, and Business Partner assumes all responsibility for the supervision, control, acts, and omissions of its employees, agents, and representatives. Consequently, neither Business Partner, its representatives, nor anyone employed by Business Partner shall be considered an employee or agent of Company for any purpose including but not limited to Unemployment or Workman's Compensation coverage, the same being expressly waived and excluded by the parties hereto.

D.    Business Partner will be responsible for payment of its own taxes and other fees due as a result of Broadwing's payments of commissions to Business Partner hereunder.

## IV.  COMPENSATION.

A.    In exchange for Business Partner's performance under this Agreement, Broadwing will compensate Business Partner for providing qualified sales prospects who become Broadwing customers in accordance with Attachment A. Business Partner understands that any pricing below Broadwing's then-current standard Business Partner pricing levels may be subject to reduced commissions at Broadwing's discretion. Broadwing must accept and agree and in advance to any

lower pricing offered by Business Partner and that agreement must be in writing, and signed by an authorized representative of Broadwing in order for such pricing to be accepted by and binding on Broadwing.

B.    For purposes of computing commission payments, Broadwing shall use the Qualifying Charges. "Qualifying Charges" is defined as: the gross monthly recurring revenue billed for services provided by Broadwing for the accounts provided by Business Partner hereunder net any discounts, directory assistance or operator services, 976/900 services, Customer Premise Equipment (CPE), local loop access charges, and excluding all credits, pass-through charges, non-recurring charges, and Federal, State, or local taxes, surcharges, and any FCC charges including Preferred Inter Exchange Carrier Charges ("PICC") and Payphone Surcharges.   Business Partner's commission amount will be adjusted to reflect any credits, billing errors, charge-backs, bad debt, write offs, or any other adjustments made by Broadwing.  Broadwing will offset (and therefore reduce) any commission payments owed to Business Partner by any credits, billing errors, charge-backs, bad debt, write offs, or any other adjustments to a customer's account regardless of the amount of time that has passed between the date the customer's account was billed and the date said credit, billing error, charge-back, bad debt, write-off, or other adjustment to a customer's account was made.

C.    All commissions will be paid pursuant to Section IV, Subsection B thirty (30) days from the customer's invoice date.

D.    With each commission payment, Broadwing will provide Business Partner a statement summarizing the computation of the amount paid.  All such payments will be final and binding on Business Partner unless written objection is delivered to Broadwing within sixty (60) days of Business Partner's receipt of such payment.

E.    No commissions will be paid on sales made to existing Broadwing customers (not derived from Business Partner) converted by Business Partner to other products or rates without the prior written consent of Broadwing.  Broadwing reserves the right to lower a customer's rates in an attempt to avoid cancellation by the customer.  Commissions to Business Partner may be adjusted to reflect any such changes.

F.    Broadwing, in its sole discretion and without prior notice, may cancel an account for any reason including, but not limited to, credit, bankruptcy, or inactivity.  No further commission shall be due or paid to Business Partner on cancelled, disconnected, or terminated accounts.

G.    Broadwing will continue to pay Business Partner the applicable residual commissions for all accounts provided by Business Partner hereunder for the term of the original customer agreement and as long as said accounts remain active with Broadwing, unless this Agreement is terminated by Broadwing in accordance with Section VI Subsections B, 1 through 8  In the event the foregoing occurs, Broadwing will discontinue payment of residual commissions to Business Partner.

H.    Broadwing will not pay any commission to Business Partner for any fraudulent or illegal use of the service as defined by Broadwing by any customer provided by Business Partner.

## V. EXCLUDED ACCOUNTS.

A.     The following customers and/or accounts are hereby excluded from this Agreement and shall not constitute any part hereof for any purpose whatsoever including the payment of commissions.

    1.     any account(s) deemed not creditworthy by Broadwing, delinquent accounts, or accounts resulting in service(s) being suspended, denied, or disconnected.

    2.     any account(s) that is an existing customer of Broadwing or has been converted from one Broadwing product to another by Business Partner on an account not sold by Business Partner.

    3.     any account(s) not in the service regions where Broadwing presently provides services or where Broadwing reasonably determines not to provide services for any reason.

B.     Broadwing reserves the right to offset from future commission payments, any amounts previously paid as commission on accounts that later become excluded accounts for any of the above reasons.

## VI.  DURATION OF AGREEMENT.

The term of this Agreement shall be for one (1) year commencing on the Effective Date.  This Agreement shall be automatically renewed on a month-to-month basis unless terminated by either party with at least sixty (60) days written notice prior to the first anniversary of the agreement or thereafter.

A.     Broadwing reserves the right to terminate this Agreement on 30 days notice if the aggregate Qualifying Charges for any calendar quarter does not meet or exceed the aggregate Qualifying Charges minimum set forth in Attachment A or, with respect to renewal terms, as otherwise agreed.

B.     Either party may terminate this Agreement (reserving cumulatively all other rights and remedies at law and in equity unless otherwise expressly stated herein) immediately, without affording the other party an opportunity to cure if a party:

    1.     has intentionally or recklessly made any materially false representation, report, or claim relative to the other party's company, its business, or its services;

    2.     materially breaches any representation, warranty, or covenant contained herein;

    3.     becomes insolvent, invokes as a debtor any laws providing for the relief of debtors or the rights of creditors, or had such law invoked against it;

    4.     becomes subject to a proceeding for the liquidation or termination of its business;

    5.     is adjudicated as bankrupt;

    6.     makes an assignment for the benefit of its creditors.

7       ceases doing business, liquidates, or dissolves without the appointment of a direct successor in interest; or

8.      engages in any unlawful activity.

C.      Business Partner shall have a Net Billed Revenue Minimum of $10,000 in new Qualifying Charges for Services per calendar year commencing on the ninth (9th) month from the date of this Agreement; after this period Business Partner will be required to sell a minimum of $10,000 of new Qualifying Charges each year, after the initial nine (9) months of the program. Failure to meet this minimum may result in termination from the Agent program.

D.      Either party may terminate this Agreement after providing written notice for any other breach of this Agreement if the breach is not cured to the reasonable satisfaction of the other party within thirty (30) days.

## VII.  AUTHORITY TO ENTER INTO THIS AGREEMENT.

Each party hereto warrants and represents that it has full authority to enter into this Agreement and to consummate the transactions contemplated herein and that this Agreement is not in conflict with any other agreement or contract to which such party is a party to or by which it may be bound. Both Parties understand and agree this is a Non-Exclusive Agreement, and that each party is free to enter into other agreements similar to this Agreement.

## VIII.  ASSIGNMENT.

Neither this Agreement nor the rights, obligations, or duties of Business Partner may be assigned or delegated to any other entity without the prior written consent of Broadwing, which consent will not be unreasonably withheld. Broadwing may assign all of its rights and obligations hereunder to a subsidiary, affiliate, successor, or purchaser of Broadwing. Broadwing agrees that if Business Partner goes public, this Agreement will remain in full force and effect. This Agreement shall be binding upon and shall inure to the benefit of the parties hereto and their respective successors and permitted assigns.

## IX.  CONFIDENTIAL TREATMENT.

A.      The terms and conditions of this Agreement and the materials provided by Broadwing including, but not limited to, customer lists, price sheets, price quotes, information regarding Broadwing's facilities, information relating to customers or prospective customers of Business Partner and/or Broadwing, marketing and business plans and projections, are disclosed in confidence and are intended to be used solely to carry out the terms and conditions of this Agreement. Business Partner shall keep all such information confidential and shall not release or disclose it to any other party during the term of this Agreement and for a period of three (3) years after termination of this Agreement, regardless of the reason for termination. Business Partner shall take appropriate precautions to prevent the unauthorized disclosure or misuse of all confidential information by any of its employees or representatives, or by any other authorized person having access to such information. Except as specifically authorized by the parties in advance and in writing, neither party will publish, communicate, or otherwise disclose to any third party any confidential information. At

the expiration or termination of this Agreement. Business Partner shall return to Broadwing all written and tangible materials provided to or produced by Business Partner to Broadwing.

B.     Business Partner understands that if Business Partner violates any of the foregoing covenants, Broadwing shall be entitled to an accounting and repayment of all compensation, commissions, remuneration, or other benefits that Business Partner directly or indirectly realized or may realize as a result of or in connection with the violation. The foregoing remedies shall be in addition to and not in limitation of any injunctive relief or other rights or remedies Broadwing is or may be entitled to at law, in equity, or under this Agreement.

C.     In the event of a breach or threatened breach by Business Partner of any of the provisions of this Section, Business Partner agrees the restrictions contained herein are fair, reasonable, and reasonably required for the protection of the interests of Broadwing.

## X.  LIMITATION OF LIABILITY.

Broadwing will not be liable to Business Partner or any third party for any indirect, cost of cover, consequential, incidental, reliance, special, exemplary, or punitive damages regardless of the legal theory of recovery. In no event will Broadwing be liable to Business Partner for any amount in excess of the aggregate net, billed revenue from the accounts sold by Business Partner

## XI.  INDEMNIFICATIONS.

A.     Each party shall indemnify and hold harmless the other from all liabilities, claims, demands, costs (including reasonable attorney's fees), judgments, or any cause of action arising out of or in connection with this Agreement caused by the failure of a party to abide by the terms and conditions herein or the negligence or willful misconduct of that party's employees or representatives.

B.     Business Partner agrees not to violate any FCC rules or federal, state, or local laws regarding customer slamming or cramming. Business Partner agrees to fully and immediately reimburse, in cash, Broadwing and the employees, officers, directors, partners, shareholders, successors, and assigns of Broadwing for all claims, damages, liabilities, or expenses of any kind (including reasonable attorney's fees and costs) arising out of the violation by Business Partner or any of Business Partner's employees or representatives of any applicable FCC rule or federal, state, or local law regarding customer slamming or cramming. Business Partner further agrees that Business Partner will not settle any claim without consulting with Broadwing and obtaining Broadwing's prior written consent.

C.     Business Partner shall be solely and singularly responsible for payment of any commissions owed to its employees, contractors, and representatives; Business Partner represents and warrants that it shall fully and faithfully pay commissions owed to its employees, contractors, and representatives in accordance with its own internal policies and procedures. Nothing contained herein shall be construed to create any obligation of Broadwing to pay commissions to any of Business Partner's employees, contractors, or representatives. Business Partner shall indemnify and hold harmless Broadwing from and against any and all claims by any Business Partner's employees, contractors, and representatives for payment of commissions. Broadwing shall have no responsibility for the payment or withholding of taxes in connection with any commissions due hereunder.

## XII. <u>BINDING ARBITRATION.</u>

A.    The parties will attempt in good faith to resolve any controversy or claim arising out of or relating to this Agreement promptly through discussions between themselves at the operational level. In the event a resolution cannot be reached at the operational level, the disputing party shall give the other party written notice of the dispute and such controversy or claim shall be negotiated between appointed counsel or senior executives of the parties who have authority to settle the controversy. If the parties fail to resolve such controversy or claim within thirty (30) days of the disputing party's notice, either party may seek arbitration as set forth below.

B.    Any controversy or claim arising out of or relating to this Agreement, or a breach of this Agreement, shall be finally settled by binding arbitration in Austin, Texas and shall be resolved under the laws of the State of Texas. The arbitration shall be conducted before a single arbitrator in accordance with the commercial rules and practices of the American Arbitration Association then in effect.

C.    Any award, order, or judgment obtained pursuant to such arbitration shall be deemed final and binding and may be enforced in any court of competent jurisdiction. The parties agree that the arbitrator shall have no power or authority to make awards or issue orders of any kind except as expressly permitted by this Agreement, and in no event shall the arbitrator have the authority to make any award that provides for punitive or exemplary damages. All such arbitration proceedings shall be conducted on a confidential basis. The arbitrator may, as part of the arbitration award, permit the substantially prevailing party to recover all or part of its attorney's fees and other out-of-pocket costs incurred in connection with such arbitration.

## XIII. <u>FORCE MAJEURE.</u>

Neither party shall be liable for delays in performing, or failure to perform, this Agreement or any obligations hereunder, which are directly attributable to causes beyond the reasonable control of the party so delayed or failing to perform, including but not limited to, acts of God, fires, floods, strikes, war, failure of a common carrier or equipment or suppliers, cable cuts, or acts of intervention by any third party or governmental authority. However, the party whose performance is delayed shall use good faith efforts to minimize the effects of such delay.

## XIV.  <u>NOTICES.</u>

A.    Every notice, demand, consent, approval, or other communication which either party is required or desires to give to the other party shall be in writing and shall be sent via U.S. Registered Mail, Return Receipt Requested or overnight commercial courier with tracking capabilities as follows:

If to Broadwing:
To:                          Broadwing Communications, LLC
                             1122 Capital of Texas Highway South
                             Austin, TX 78746
                             Attention: General Counsel

With a copy to:              Broadwing Communications, LLC

1821 Barrington Dr
Roanoke, TX 76262
Attention: Vice President, Channel Sales

Said notices may be sent to such other address or addresses as the parties may from time to time designate by written notice hereunder.

B.    Every notice, demand, request, or other communication shall be deemed to have been given upon confirmed receipt or on the third business day after the same has been properly addressed and deposited as aforesaid, whichever is sooner.

## XV.  GENERAL.

A.    This is a Non-Exclusive Agreement.  Both parties may execute similar Agreements with other companies.

B.    Broadwing shall be the carrier of record for Broadwing customers for the services provided by Broadwing.

C.    Broadwing shall in no way be considered or represented as an official endorser of any party or customer represented by Business Partner.

D.    Broadwing may offset any amounts owed to Broadwing by Business Partner against any commissions Broadwing may owe to Business Partner under this Agreement or any other agreement.

E.    The provisions of Sections IV, X, XI, XII, and XIII hereof shall survive the termination of this Agreement, regardless of the reason for termination.

**IN WITNESS WHEREOF**, the parties hereto have caused these presents to be executed, acknowledged, and delivered in a form and manner proper and sufficient at law, all as of the date and the year first above written.

**BROADWING**

Broadwing Communications, LLC

By: _____

Name: Zane Long

Date:  5-27-05

Title:  Vice President

Phone Number:  817-741-7879

**BUSINESS PARTNER**

Ben Goldberg

By: _____

Name:  Ben Goldberg

Date:  4/1/05

Title:  President

Phone Number:  917-655-5000

## Attachment A

Commission Schedule

Net Billed Revenue Minimums

$10,000 in new Qualifying Charges for Services per calendar year commencing on the ninth (9th) month from the date of this Agreement, after this period Business Partner will be required to sell a minimum of $10,000 of new Qualifying Charges each year, after the initial nine (9) months of the program. Failure to meet this minimum may result in termination from the Agent program.

Broadwing acknowledges that Business Partner's Residual Commission(s) for accounts established as of April 1, 2005 is at the $25,001 - $50,000 level.

| Qualifying Charges (U.S. Dollars) | Voice Commission % | Data Commission % |
|---|---|---|
| $1.00 - $25,000.00 | 12% | 14% |
| $25,001.00 - $50,000 | 13% | 16% |
| $50,001.00 - $75,000 | 14% | 18% |
| $75,001.00 + | 16% | 19% |

1)     Qualifying Charges shall be calculated in accordance with Section IV, Subsection B of the Agreement.

1)     Commissions will be paid for the life of the customer and as long as said accounts remain active with Broadwing, providing the Business Partner remains in good standing. (Section IV, Subsection G)

2)     Commission adjustments will be retroactive to the beginning of the month when Business Partner meets or exceeds each qualifying billing threshold; Business Partner will be paid that commission percentage for their entire base of business on a going-forward basis.

3)     Commission percentages are subject to any adjustments Broadwing makes in accordance with the Agreement.

# Broadwing

**AMENDMENT No. 1 TO THE
AGENT SERVICES AGREEMENT**

This Amendment No. 1 to the Agent Services Agreement is made and entered into by and between **Broadwing Communications, LLC**, a Delaware limited liability company that is successor in interest to Broadwing Telecommunications Inc., with its principal place of business at 1122 Capital of Texas Highway South, Austin, Texas 78746-6426 ("Broadwing"), and **Bennett Goldberg**, with its principal place of business at 300 East 34th Street #33G New York City, New York, 10016 ("Business Partner").

For purposes of this Amendment, terms and conditions set forth herein shall become effective on the last date of execution below (the "Amendment Effective Date").

This Amendment is made with reference to the following facts:

    A.    Business Partner and Broadwing are parties to that certain Agent Services Agreement dated as of 6/1/05 (as amended, the "Agreement").

    B.    The parties desire to amend the Agreement pursuant to the terms set forth below.

<u>Terms of Amendment</u>

Accordingly, in consideration of the mutual promises set forth below, the parties agree as follows:

    1.    Exhibit B, *Local Access Commission Schedule*, attached hereto shall be added in its entirety to the Agreement.

    2.    All other terms and conditions, provisions, supplements and exhibits of the Agreement shall remain in full force and effect.

IN WITNESS WHEREOF, the parties have executed this Amendment as of the date last written below.

**Broadwing Communications, LLC**

By: _____

Name: _Zane Long_____

Title: _VP_____

Date: _8-5-05_____

**Full Business Address:**
1122 Capital of Texas Highway South

Austin, Texas 78746-6426
Telephone: 512-742-3700
Facsimile: 512-328-7902

By: _____

Name: _BENNETT GOLDBERG_____

Title: _President_____

Date: _6/6/05_____

**Full Business Address:**
300 East 34th Street #33G New York City, New York, 10016

Telephone: ██████
Facsimile: ██████

C:\Documents and Settings\BillN\Local Settings\Temporary Internet Files\OLK202\Agent Loop Trial Amendment 6-7-05 (3).doc

© 1995 JULIUS BLUMBERG, INC.

STATE OF NEW YORK, COUNTY OF                                                 ss.:

I, the undersigned, an attorney admitted to practice in the courts of New York State,

☐ **Certification By Attorney**   certify that the within

has been compared by me with the original and found to be a true and complete copy.

☐ **Attorney's Affirmation**   state that I am

the attorney(s) of record for                                                                                        in the within

action; I have read the foregoing                                                                    and know the contents thereof;

the same is true to my own knowledge, except as to the matters therein alleged to be on information and belief, and as to those matters

I believe it to be true. The reason this verification is made by me and not by

The grounds of my belief as to all matters not stated upon my own knowledge are as follows:

I affirm that the foregoing statements are true, under the penalties of perjury.

Dated:

............................................................
The name signed must be printed beneath

STATE OF NEW YORK, COUNTY OF                                                 ss.:

I, the undersigned, being duly sworn, depose and say: I am

☐ **Individual Verification**   in the action; I have read the foregoing

and know the contents thereof; the same is true to my own knowledge, except

as to the matters therein stated to be alleged on information and belief, and as to those matters I believe it to be true.

☐ **Corporate Verification**   the                                      of

a

corporation and a party in the within action; I have read the foregoing

and know the contents thereof; and the same is true to my own knowledge,

except as to the matters therein stated to be alleged upon information and belief, and as to those matters I believe it to be true. This

verification is made by me because the above party is a corporation and I am an officer thereof.

The grounds of my belief as to all matters not stated upon my own knowledge are as follows:

Sworn to before me on

............................................................
The name signed must be printed beneath

STATE OF NEW YORK, COUNTY OF                                                 ss.:          (If more than one box is checked—indicate after names type of service used.)

I, the undersigned, being sworn, say: I am not a party to the action, am over 18 years of age and reside at

On                                                                I served the within

☐ **Service By Mail**   by mailing a copy to each of the following persons at the last known address set forth after each name below.

☐ **Personal Service on Individual**   by delivering a true copy of each personally to each person named below at the address indicated. I knew each person served to be the person mentioned and described in said papers as *a party therein:*

☐ **Service by Electronic Means**   by transmitting a copy to the following persons by ☐ FAX at the telephone number set forth after each name below ☐ E-MAIL at the E-Mail address set forth after each name below, which was designated by the attorney for such purpose, and by mailing a copy to the address set forth after each name.

☐ **Overnight Delivery Service**   by dispatching a copy by overnight delivery to each of the following persons at the last known address set forth after each name below.

Sworn to before me on

............................................................
The name signed must be printed beneath

Index No.                          Year
                                   2007

Bennett Goldberg,

                    Plaintiff,

              - against -

Level 3 Communications, LLC

                    Defendant.

Signature (Rule 130-1.1-a)

Print name beneath

Adam Cohn

*Attorney for*                    Plaintiff
*Office and Post Office Address, Telephone*

Law Offices of David K. Bowles
44 Wall Street, 12th Floor
New York, NY 10005

To

Attorney(s) for

Service of a copy of the within is hereby admitted.
Dated

Attorney(s) for

1500 - **Blumberg** Excelsior Inc., NYC 10013

---

NOTICE OF ENTRY

PLEASE take notice that the within is a (*certified*) true copy of a duly entered in the office of the clerk of the within named court on

Dated,
              Yours, etc.

*Attorney for*
*Office and Post Office Address*

To

Attorney(s) for

NOTICE OF SETTLEMENT

PLEASE take notice that an order

of which the within is a true copy will be presented for settlement to the Hon.

one of the judges of the within named Court, at

on
at            M.
Dated,
              Yours, etc.

*Attorney for*
*Office and Post Office Address*

To

Attorney(s) for

UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------x
BENNETT GOLDBERG,                        :
                                         :     07 Civ. _____
                        Plaintiff,       :
                                         :     **CERTIFICATE OF SERVICE**
v.                                       :
                                         :
LEVEL 3 COMMUNICATIONS, LLC              :
                                         :
                        Defendants.      :
-------------------------------------------------------------x

       I, JAMES J. STRICKER, hereby certify that a true and correct copy of the Notice of

Removal, dated September 5, 2007, has been served by overnight mail, this 5th day of September

2007, upon the following:

       Law Offices of David K. Bowles
       Attn: Adam Cohn, Esq.
       44 Wall Street, 12th Floor
       New York, New York 10005
       *Attorneys for Plaintiff Bennett Goldberg*

                                            James J. Stricker